UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAMIA NELLUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-01579-TWP-CSW |
| | ) |
| CREDIT ACCEPTANCE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

### ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND RELATED MOTIONS

This matter is before the Court pursuant to an Entry Referring Motions to the Magistrate Judge. In response to the Complaint, Defendant Credit Acceptance Corporation ("Credit Acceptance") filed its *Motion to Compel Arbitration* (Dkt. 14) and supporting brief (Dkt. 15). Self-Represented Plaintiff Kamia Nellum ("Nellum") filed her *Motion to Strike Defendant's Motion to Compel Arbitration* (Dkt. 17) and a *Limited Response in Opposition to Defendant's Motion to Compel Arbitration* (Dkt. 18).

Thereafter, Credit Acceptance filed its *Reply in Support of Motion* (Dkt. 19), addressing Plaintiff's *Limited Response* (Dkt. 18). Nellum filed her *Motion for Leave to File Sur-Reply* (Dkt. 20) and followed it by her *Supplemental Sur-Reply* (Dkt. 21). Credit Acceptance filed its *Response in Opposition* (Dkt. 22), addressing Plaintiff's *Motion to Strike* (Dkt. 17). Additionally, Nellum filed her *Emergency Motion To Expedite Ruling on Defendant's Motion to Compel Arbitration and Plaintiff's Related Motions* (Dkt. 23).

For the following reasons, the Court **GRANTS** Credit Acceptance's *Motion to Compel Arbitration* (Dkt. 14), **DENIES** Nellum's *Motion to Strike* (Dkt. 17), **GRANTS in part** Nellum's *Motion for Leave to File Sur-Reply* (Dkt. 20) and **DENIES AS MOOT** Nellum's *Emergency Motion* (Dkt. 23).

**I.    BACKGROUND**

This case concerns a dispute between Nellum and Credit Acceptance over Nellum's purchase of a 2017 Chevrolet Malibu ("the Vehicle") on July 15, 2024, via a retail installment contract ("the Contract"). (Dkt 1-1). As part of the transaction, Nellum executed a Declaration Acknowledging Electronic Signature Process confirming that she had personally affixed her electronic signature to the Contract. (Dkt. 16-1). Importantly for purposes of the pending *Motion*, Nellum initialed both the Notice of Arbitration and the Arbitration Clause of the Contract thereby acknowledging she "read, [understood], and agree[d] to the terms and conditions of the Arbitration Clause." (*Id.*). The Arbitration Clause provides:

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute. … If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. … If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute.

(Dkt. 16-1).

"We" and "Us" are collectively defined as "Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation)." Additionally, the Arbitration Clause defines the types of "disputes" that the parties agreed to submit to binding arbitration:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

(Dkt. 16-1).

Although the Arbitration Clause permitted Nellum to reject it by written rejection within thirty (30) days of the date of the Contract, Nellum failed to do so.

Nellum's Complaint, filed in the Marion County, Indiana Superior Court[1] on July 18, 2025, alleges that Credit Acceptance "unlawfully repossessed [the Vehicle] without issuing proper notice or complying with statutory procedures" and attempted to repossess an "unrelated vehicle registered to Plaintiff's mother." (Dkt. 1-1). Additionally, her Complaint alleges that Credit Acceptance "misrepresented the vehicle's auction status" and "failed to communicate honestly, misled Plaintiff throughout the process, and engaged in bad faith by ignoring reasonable attempts to resolve the dispute." Nellum further alleges that Credit Acceptance "facilitated the sale of a defective vehicle" and "recklessly engaged in repossession and intimidation tactics."

Nellum asserts claims against Credit Acceptance for wrongful repossession (Count I), retaliation and abuse of process (Count II), deceptive business practices (Count III), breach of good faith and fair dealing (Count IV), negligent and reckless conduct (Count V), and intentional infliction of emotional distress (Count VI). Credit Acceptance filed its *Motion to Compel Arbitration* (Dkt. 14) and supporting brief (Dkt. 15). Credit Acceptance contends that Nellum's six claims are subject to arbitration and therefore, seeks an order compelling arbitration and staying the case.

## II. LEGAL STANDARD

In 1925, Congress enacted the Federal Arbitration Act ("FAA") in response to "widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, arbitration is a matter of contract. *Am. Exp.*, 570 U.S. at 233. Consistent with this principle, courts must place arbitration agreements "on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).

A party seeking to compel arbitration must show (1) a valid agreement to arbitrate, (2) the dispute is within the scope of arbitration, and (3) the opposing party refuses to proceed to arbitration. *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Arbitration can only be compelled when the court is "satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *United Nat. Foods, Inc. v. Teamsters Loc. 414*, 58 F.4th 927, 933 (7th Cir. 2023). Whether a valid arbitration agreement exists is a matter of state contract law. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Under Indiana law[2], an arbitration agreement—like any enforceable contract—requires an offer, acceptance, consideration. *Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023).

If the moving party establishes that there is a valid arbitration agreement, the FAA provides a strong presumption that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations omitted). Any doubt concerning the arbitration "should be resolved in favor of coverage." *Id.*

A motion to compel arbitration is decided according to the standard used to resolve summary judgment motions pursuant to Fed. R. Civ. P. 56. *Tinder*, 305 F.3d at 735. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

### III. DISCUSSION

Credit Acceptance argues that this dispute falls squarely within the ambit of the Arbitration Clause. (Dkt. 14; Dkt. 16-1). Credit Acceptance further contends Nellum is bound by the provision of the Arbitration Clause to arbitrate "any controversy or claim" she has with Credit Acceptance related to the Contract or Vehicle. (Dkt. 15).

In response, Nellum contends that Credit Acceptance's *Motion to Compel* does not substitute for an answer to her *Complaint*. (Dkt. 17). Additionally, Nellum's *Limited Response* (Dkt. 18) argues that Credit Acceptance's *Motion to Compel* is improper because the majority of her claims arose after the repossession and do not concern the performance of the retail installment contract. As such, she contends that Credit Acceptance's *Motion to Compel* should be denied in full. Alternatively, Nellum argues that if this Court determines any claims are arbitrable, "only those contract-based claims be sent to arbitration and that all remaining tort and statutory claims proceed before this Court." Nellum further contends that Credit Acceptance has waived its right to arbitration by removing the action to federal court, engaging in motion practice, and delaying arbitration.[3]

In response, Credit Acceptance contends Nellum conceded the validity of the Arbitration Clause by failing to substantively respond that the Arbitration Clause is valid and enforceable. (Dkt. 19). Credit Acceptance further contends that based on the language of the Arbitration Clause, the Clause encompasses all of Nellum's claims related to the repossession. Finally, Credit Acceptance argues that its conduct does not constitute a waiver of its right to arbitration.

### A. MOTION TO STRIKE

Credit Acceptance's *Motion to Compel* (Dkt. 14) is a proper response to Nellum's Complaint. (Dkt. 1-1). A defendant may file a motion to compel arbitration in lieu of an answer.[4] This is because "an arbitration clause is a type of forum-selection clause." *Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015). Accordingly, motions to compel arbitration concern venue and "are

brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1) [subject-matter jurisdiction]." *Id.*

As the Tenth Circuit outlined, "cases involving motions to compel arbitration typically just note the filing of the motion in response to the complaint, without even mentioning the presence or absence of any responsive pleading." *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 608 n.1. (10th Cir. 2011). The *Lamkin* court emphasized that "requiring a party to file an answer denying material allegations in the complaint and asserting potential affirmative defenses—in short, formally and substantively *engaging in the merits of the litigation*—in order to enforce its right *not to litigate* is a non-sequitur." *Id.* (emphasis in original).

Here, Nellum's *Motion to Strike* (Dkt. 17) contends that Credit Acceptance's *Motion to Compel* does not substitute for an answer to her Complaint. This argument is contrary to law. Because a defendant may file a motion to compel arbitration in lieu of an answer, Nellum's *Motion to Strike* (Dkt. 17) is **DENIED.**

### B. WAIVER OF THE RIGHT TO ARBITRATION

Credit Acceptance has not waived its right to arbitration. There is a "strong federal policy" favoring arbitration. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). As such, parties asserting waiver of a right to arbitrate "bear a 'heavy burden' and courts should not 'lightly infer' waiver." *Id.* To establish waiver, a party must show that the party seeking arbitration "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.,* 660 F.3d 988, 994 (7th Cir. 2011). Several factors are considered in the waiver analysis, including "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* Additionally, the Court affords more weight to the "diligence or the lack thereof of the party seeking arbitration," and asks whether the party did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed

judicially or by arbitration." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

Nellum contends Credit Acceptance waived its right to arbitration by removing the action to federal court, engaging in motion practice, and delaying arbitration. (Dkt. 18). Credit Acceptance argues that removal of a case to federal court alone is insufficient to establish waiver. (Dkt. 19). Further, Credit Acceptance argues its "participation in this litigation has been minimal," and notes it "announced its intention to arbitrate at every turn, refrained from engaging in discovery or dispositive motion practice (other than to oppose Plaintiff's unsuccessful motion for remand), and filed its *Motion to Compel Arbitration* just two months after removing the case."

Courts have found waiver where a defendant seeking to compel arbitration not only removed the case to federal court but also participated in discovery. *Cabinetree of Wisconsin, Inc.*, 50 F.3d at 391. In *Cabinetree*, the Court found a party waived arbitration when only nine months after filing a lawsuit and issuing discovery requests requiring the other party to produce nearly two-thousand documents did it seek arbitration. *Id*. at 389. The instant case is distinguishable. While Credit Acceptance removed this case to federal court, it has not filed an answer to Nellum's Complaint and has not participated in discovery. Credit Acceptance timely and properly sought arbitration two months after removal. Accordingly, because Nellum has not shown that Credit Acceptance has acted inconsistently with its right to arbitrate, this Court finds that Credit Acceptance has not waived its right to seek arbitration.

### C. VALIDITY OF THE ARBITRATION AGREEMENT

The Arbitration Clause is a valid agreement to arbitrate. Whether a valid arbitration agreement exists is a matter of state contract law. *Tinder*, 305 F.3d at 733. In Indiana, "an agreement to arbitrate must be in writing and evince an intention to resolve some controversy through arbitration." *Novotny v. Renewal by Andersen Corp.*, 861 N.E.2d 15, 22 (Ind. Ct. App. 2007). As with all contract

interpretation, Courts give the language of the arbitration agreement "its plain and ordinary meaning." *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1241-42 (Ind. Ct. App. 2010). To "determine the intent of the parties at the time the contract was made," a Court should examine "the language used to express their rights and duties." *Id.* When construing an arbitration agreement, "every doubt is to be resolved in favor of arbitration." *Id.*

As Credit Acceptance notes, Nellum conceded to the validity of the Arbitration Clause by failing to respond to Credit Acceptance's claim in its *Motion to Compel* that the Arbitration Clause is valid and enforceable. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and a party's "silence leaves [the court] to conclude" a concession). Additionally, Credit Acceptance has presented evidence in the form of a sworn declaration and exhibits that both the Notice of Arbitration and the Arbitration Clause were in writing and initialed by Nellum. (Dkt. 16-1). Credit Acceptance has also provided evidence of Nellum's execution of a Declaration Acknowledging Electronic Signature Process, confirming that she had personally affixed her electronic signature to the Contract (Dkt. 16-2) and a sworn declaration that Nellum had the opportunity to reject the Arbitration Clause within 30 days of the date of the Contract and failed to do so (Dkt. 16).

Nellum does not raise any arguments related to the validity of the arbitration clause and does not dispute that she failed to reject her assent to the Contract or to the Arbitration Clause within. (Dkt. 18). Instead, Nellum concedes that a "small fraction" of her claims "could arguably fall within" the Arbitration Clause. (*Id.* at 1). The Arbitration Clause is written broadly to encompass all disputes and explicitly contains the parties' agreement to submit all disputes related to the Contract to arbitration; therefore, the Arbitration Clause is valid.

### D. WHETHER THE DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION CLAUSE

Nellum's claims fall within the scope of the Arbitration Clause.  In addition to showing a valid agreement to arbitrate, a party seeking arbitration must also show that the dispute is within the scope of arbitration.  *Kass*, 75 F.4th at 700.  This Court has held "[i]f an 'arbitration clause is broad enough, by its own terms, to encompass disputes,' then arbitration of those disputes is required.  *Edmondson v. German Am. Bank*, 748 F. Supp. 3d 621, 628 (S.D. Ind. 2024); quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002).  Moreover, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration." *Id*. at 629.

While Nellum concedes that "roughly 15%" of her claims could arguably fall within the Arbitration Clause, she contends that "approximately 85%" of her claims are not covered by the Arbitration Clause.  (Dkt. 18).  As such, she requests that if this Court determines that any of her claims are arbitrable, "only those contract-based claims be sent to arbitration and that all remaining tort and statutory claims proceed before this Court." (*Id*.).  In response, Credit Acceptance contends that the Arbitration Clause encompasses Nellum's repossession-related tort and statutory claims.  (Dkt. 19).

Additionally, Nellum argues that the Clause "expressly excludes" repossession-related tort and statutory claims.  (Dkt. 18).  Nellum cites to a cherry-picked portion of the Arbitration Clause's repossession carve-out provision to support her contention.  (*Id*.).  However, the full text of the Arbitration Clause's repossession carve-out provision provides:

> "Dispute" does not include any repossession of the Vehicle upon Your default or any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using such remedy, so long as such individual action does not involve a request for monetary relief of any kind.

(Dkt. No. 16-1 at 5).

Credit Acceptance notes that the repossession carve-out provision is inapplicable because Nellum is not seeking to prevent Credit Acceptance from repossessing or selling the Vehicle. (Dkt. 19). Indeed, this Court notes that based on the claims in Nellum's Complaint regarding Credit Acceptance's alleged "unlawful repossession of Plaintiff's vehicle," (Dkt. 1-1) the repossession has already occurred. Credit Acceptance further highlights that Nellum's Complaint includes a request for monetary relief, which expressly removes it from the carve-out. (*Id.*; Dkt. 19).

The express language of the Arbitration Clause is written broadly and provides the buyer agrees to arbitrate a "dispute," defined as "*any controversy or claim*"—including "claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories"—"arising out of or in any way related to [the] Contract," including "any default" or "collection of amounts due under [the] Contract." (Dkt. No. 16-1 at 5).

Other district courts have examined Credit Acceptance's Arbitration Clause and found it broad enough to encompass a plaintiff's repossession-related claims. *See LaRue v. Collateral Recovery Team LLC*, 2019 WL 5538423, at *3 (S.D. Tex. Oct. 25, 2019) (finding that definition of "dispute" in Credit Acceptance's Arbitration Clause that included "contract claims, claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories" encompassed the plaintiff's repossession-related claims); *Credit Acceptance Corp. v. Vansteenburgh,* 2017 WL 4560173, at *4 (N.D. Miss. Oct. 12, 2017) (same); *Gillette v. Serv. Intel. LLC,* 2019 WL 5268570, at *3 (E.D. Wis. Oct. 17, 2019) (same, and noting that "[w]hen reviewing the scope of an arbitration contract, the court will not veer from the plain text to rewrite operative provisions that clearly indicate arbitrable issues").

Therefore, based on a plain reading of the Clause, this Court finds that the Arbitration Clause encompasses all claims, including any tort and statutory claims. Accordingly, Nellum's claims, as pled in her Complaint, are within the scope of the Arbitration Clause and must be arbitrated.

### IV. CONCLUSION

For the foregoing reasons, Credit Acceptance's *Motion to Compel Arbitration* (Dkt. 14) is **GRANTED**. If Nellum intends to pursue her claims, she must proceed as set forth in the Arbitration Agreement.

Credit Acceptance has requested a stay of the action pending arbitration. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather to dismiss outright."). Pending further order of the Court, all proceedings in this action are hereby **STAYED.**

Credit Acceptance is **ORDERED** to file a status report on or before **January 17, 2026**, indicating whether Plaintiff has initiated arbitration. If arbitration is not pursued by **January 17, 2026**, this action will be dismissed with prejudice. If arbitration is pursued, Credit Acceptance is ordered to file reports on the status of the arbitration **every 60 days, beginning January 17, 2026**.

Additionally, Plaintiff's *Motion to Strike Defendant's Motion to Compel Arbitration* (Dkt. 17) is **DENIED**. Plaintiff's *Motion for Leave to File Sur-Reply* (Dkt. 20) is **GRANTED IN PART,** in that the Court reviewed and considered Plaintiff's arguments within the sur-reply. Plaintiff's *Emergency Motion* (Dkt. 23) is hereby **DENIED as moot**.

**SO ORDERED.**

Date: November 18, 2025

_____
Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

Distribution:

Kamia Nellum
8776 Bald Eagle Court
Indianapolis, IN 46234

Alan M. Ritchie
Pilgrim Christakis LLP
aritchie@pilgrimchristakis.com

---

[1] Credit Acceptance removed the case to federal court on August 8, 2025 (Dkt 1). This Court denied Nellum's *Motion to Remand to State Court* on October 7, 2025 (Dkt. 13).

[2] The parties generally agree that Indiana law applies, (Dkt. 15 at 5) and (Dkt. 18 at 2).

[3] Nellum cites to *Messina v. N. Cent. Distrib., Inc.*, 821 N.E.2d 236 (Ind. Ct. App. 2005) for the proposition that that "[u]nder federal and Indiana precedent, such litigation conduct constitutes waiver." A Westlaw search for the *Messina* case shows that the proper citation for the case is *Messina v. N. Cent. Distrib., Inc.,* 821 F.3d 1047, 1050 (8th Cir. 2016) and that no such case was addressed by the Indiana Court of Appeals. Additionally, Nellum cites to "*Miller v. Credit Acceptance Corp.*, 2019 WL 2450930 (S.D. Ind. 2019)" as authority for the proposition that "[t]his very court has already held that post-repossession and credit-reporting conduct by Credit Acceptance falls outside its arbitration clause." However, this case citation does not exist. A Westlaw search using "2019 WL 2450930" yields a 2019 habeas corpus decision from the District of Utah. *See Honie v. Crowther*, 2019 WL 2450930, (D. Utah June 12, 2019). A Westlaw search using "Miller v. Credit Acceptance Corp." yields two opinions from the same case addressing a motion for remand. *See Miller v. Credit Acceptance Corp.*, 2012 WL 1621268, at *1 (N.D. Ohio May 9, 2012) (granting motion for remand); *Miller v. Credit Acceptance Corp.*, 2012 WL 2463912, at *1 (N.D. Ohio June 27, 2012) (denying plaintiff's motion for attorney's fees).

    Although Nellum's sur-reply affirmatively represents that she did not fabricate citations, she concedes that "[s]ome references may be imperfect due to limited access and the complexity of legal databases. (Dkt. 20-1).

    Nellum is not excused from compliance with the procedural rules and is hereby cautioned that submitting hallucinated citations to the Court is unacceptable. Such conduct can result in sanctions. *See Pearle Vision, Inc. v. Room*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "*pro se* litigants are not excused from compliance with the procedural rules"); *see also Tsupko v. Kinetic Advantage, LLC,* No. 1:24-CV-01210-TWP-KMB, 2025 WL 2677157, at *5 (S.D. Ind. Sept. 17, 2025) (cautioning a *pro se* litigant for his citations to non-existent case law). *See also Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC,* No. 2:24-CV-00326-JPH-MJD, 2025 WL 574234, at *5 (S.D. Ind. Feb. 21, 2025), *report and recommendation adopted as modified,* No. 2:24-CV-00326-JPH-MJD, 2025 WL 1511211 (S.D. Ind. May 28, 2025).

[4]*See Hembd v. BR Assocs., Inc.*, No. 3:08-CV-187-RLY-WGH, 2009 WL 10713131, at *1 (S.D. Ind. Feb. 27, 2009) ("In lieu of filing an answer to Plaintiff's complaint, Defendant filed the instant motion to compel arbitration and stay these proceedings."); *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) ("In response to the litigation initiated by Kiefer, Tarkett filed a motion to compel arbitration pursuant to the arbitration provision in the parties' distributorship agreements and to stay the suit pending arbitration.").